IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| Douglas R. Knutson and Linda F. Knutson, ) ) Plaintiffs, ) ) vs. ) ) City of Fargo, a municipal corporation, ) ) Defendant. ) ) | **ORDER DISMISSING CASE** Civil File No. 3:07-cv-68 |

Before the Court is a Motion by the City of Fargo ("the City") for Judgment on the Pleadings (Doc. #6). Douglas Knutson and Linda Knutson ("the Knutsons") resist the Motion (Doc. #7).

**SUMMARY OF DECISION:**

The Knutsons brought similar state claims on virtually identical facts in state court. The Knutsons' federal Constitutional challenges are therefore barred by the Rooker-Feldman doctrine, issue preclusion and claim preclusion. This Court is without subject matter jurisdiction and the matter is therefore **DISMISSED** without prejudice.

**FACTS:**

On July 8, 2003, a City of Fargo cast iron water main broke. Water flowed onto the Knutsons' property, damaging their house and yard.

The Knutsons filed an action in state court on August 5, 2004. Their suit alleged the City had trespassed and had "taken or damaged for public use" their property, in violation of Article I,

§ 16, of the North Dakota Constitution (Doc. #9-4, pp. 5-6).

The state district court granted summary judgment in favor of the City, concluding that arguably negligent acts by the City could not constitute trespass, an intentional tort, or inverse condemnation, which requires some affirmative act (Doc. #9-4, pp. 51-53). Additionally, the district court concluded the City had discretionary immunity.

The Knutsons appealed to the North Dakota Supreme Court, which affirmed the district court. A petition for rehearing was denied.

Through this action, the Knutsons seek to use the United States Constitution to obtain federal remedies for the damage to their property.

## DISCUSSION:

The Knutsons' § 1983 action arises under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States. They argue they have been deprived of their right to be secure in their house and effects as guaranteed by the Fourth and Fourteenth Amendments, that the flooding constitutes a Fourth Amendment seizure, that they were denied equal protection and due process of law as guaranteed by the Fourteenth Amendment, and that they were denied just compensation as guaranteed by the Fifth and Fourteenth Amendments.

Judgment on the pleadings under Rule 12(c), Fed. R. Civ. P., is appropriate where the moving party has established that there are no material issues of fact remaining and the moving party is entitled to judgment as a matter of law. Potthoff v. Morin, 245 F.3d 710, 715 (8th Cir. 2001). An issue of fact is "material" if its resolution, one way or the other, could affect the outcome of the case. Iowa Beef Processors, Inc. v. Amagamated Meat Cutters and Butcher Workmen of America, AFL-

CIO, 627 F.2d 853, 855 (8th Cir. 1980).  It does not appear that the parties dispute the facts or the procedural history of this case, and the case therefore appears to be ripe for adjudication.  However, because the City has posited that preclusion doctrines render this Court without jurisdiction to hear the matter, this jurisdictional question must be resolved at the outset.

Preclusion Doctrines, Generally:

Plaintiffs do not have a "right" to vindicate their federal claims in federal court.  San Remo Hotel, L.P. v. City and County of San Francisco, 545 U.S. 323, 342 (2005).  In fact, the Supreme Court has observed that "issues actually decided in valid state-court judgments may well deprive plaintiffs of the 'right' to have their federal claims re-litigated in federal court."  Id. The Full Faith and Credit statute, 28 U.S.C. § 1738, provides that "Acts, records and judicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory, or Possession from which they are taken."  The Full Faith and Credit statute gives rise to several doctrines that dictate when a court is without jurisdiction over a claim, issue, or even an entire case.

The Rooker-Feldman doctrine acts as a jurisdictional bar by depriving the federal courts of the power to reconsider matters previously resolved by state courts.  United States v. Timley, 443 F.3d 615, 628 (8th Cir. 2006) (citing Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000)).  Rooker-Feldman prohibits not only straightforward appeals but also review of matters "inextricably intertwined" with state court rulings.  Id.  A federal claim is "inextricably intertwined" with a state court's judgment if the federal claim may only succeed if the Court concludes the state court wrongly decided the issue.  Id.  (citing Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987)). The doctrine has historically been applied liberally by the District and Circuit Courts; however, the

Supreme Court recently emphasized the narrowness of the doctrine:

> The Rooker-Feldman doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005). In Exxon Mobil Corp., the Supreme Court re-emphasized the availability and appropriateness of the more general preclusion doctrines, claim preclusion and issue preclusion.

"The doctrine of collateral estoppel, also known as issue preclusion, provides that 'when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in another lawsuit.'" Chavez v. Weber, 497 F.3d 796, 803 (8th Cir. 2007) (quoting United States v. Brekke, 97 F.3d 1043, 1049 (8th Cir. 1996)). North Dakota defines collateral estoppel as "'generally foreclos[ing] the relitigation, in a second action based on a different claim, of particular issues of fact or law which were, or by logical and necessary implication must have been, litigated and determined in the prior suit.'" Riemers v. Anderson, 680 N.W.2d 280, 285 (N.D. 2004) (quoting Reed v. University of North Dakota, 589 N.W.2d 880, 883 (N.D. 1999) .

Although claim and issue preclusion are related, the doctrines are not the same. Ungar v. North Dakota State University, 721 N.W.2d 16, 20 (N.D. 2006). The North Dakota Supreme Court explains that res judicata, or claim preclusion,

> prevents relitigation of claims that were raised, or could have been raised, in prior actions between the same parties or their privies. Thus, res judicata means a valid, existing final judgment from a court of competent jurisdiction is conclusive with regard to claims raised, or those that could have been raised and determined, as to their parties and their privies and all other action. Res judicata applies even if subsequent claims are based upon a different legal theory.

Id. at 20-21 (citations and quotations omitted).

Fourth Amendment "Unreasonable Governmental Interference" Claim:

The Knutsons' Fourth Amendment claim is based on alleged unreasonable governmental interference with their property. The Knutsons argue this claim was not ripe until after their state proceedings gave rise to the finding that the City had the authority – and was therefore acting "under color of law" – when it laid the water main in 1950. The Knutsons assert they had no reason to suspect that the City was acting under color of law until this determination arose in state court.

Res judicata, or claim preclusion, "prevents relitigation of claims that were raised, or could have been raised," between the same parties, whether based upon the same or different legal theories. Ungar, 721 N.W.2d at 20-21. The Knutsons argue that because the finding that the City was acting "under color of law" was not foreseeable, claim preclusion is not applicable. In Borsheim v. O & J Properties, the North Dakota Supreme Court held that "although the doctrine of res judicata may require a party to plead in the alternative with inconsistent claims . . . it should not, if fairness and justice are not to be abandoned, require a party to anticipate a cause of action or claim which does not exist at the time of the commencement of the action or claim." 481 N.W.2d 590, 597 (N.D. 1992). The Knutsons' reliance on Borsheim is misplaced. The evidence clearly establishes that the Knutsons knew or should have known that the City, a governmental entity, laid the water main as part of government function and was therefore acting "under color of law." Even though the Knutsons claim a lack of personal knowledge that the City laid the water main, this information was readily ascertainable by a review of public records. Thus, the Knutsons' assertion that they had no reason to know that the City had the authority to lay the water main in 1950 is either patently false or the result of deliberate ignorance. Neither position is sufficient as a matter of law.

5

The Court need not reach the Knutsons' argument that neither Rooker-Feldman nor issue preclusion are applicable to their Fourth Amendment claim, because the doctrine of claim preclusion is dispositive. The Fourth Amendment claim, if any, was reasonably foreseeable at the time the Knutsons brought their state court action. It arises out of the same facts and circumstances as the state claims, and it could have been brought in state court. State courts are fully competent to determine issues of federal constitutional law. Middleton v. McDonald, 388 F.3d 614, 618 (8th Cir. 2004). Under these circumstances, the Fourth Amendment claims are clearly barred by the doctrine of claim preclusion.

Fourteenth Amendment Equal Protection and Due Process Claims:

The Knutsons' Fourteenth Amendment claims are based on the North Dakota state court's and the City's alleged deprivation of the Knutsons' rights to substantive and procedural due process and equal protection under the law. The Knutsons contend these claims are not subject to the various preclusion doctrines because they could not reasonably anticipate the City's defenses of negligence, governmental immunity or North Dakota's failure to offer a remedy for a one-time flooding. The Knutsons assert that they could not reasonably anticipate the facts of the case or the state of the law and that the claims should not be barred by the preclusion doctrines for this lack of prescience.

Claim preclusion prevents relitigation of claims that could have been raised between the same parties, even if those claims are based on different legal theories. Ungar, 721 N.W.2d at 20-21. A review of the record reveals that these Fourteenth Amendment claims were readily foreseeable and should have been raised in the underlying state court action. The following ideas are pertinent and dispositive: 1) The state courts' decisions were based on well-established precedent; 2) Counsel

for the Knutsons conceded during the Supreme Court oral argument that he found not one case in which one act of "nuisance" constituted inverse condemnation; 3) That the state court decisions were handed down as they were was not an unforeseeable result; and 4) These claims should have been pled in the alternative at the state court level and are therefore barred by claim preclusion.

Even if claim preclusion did not apply to the Knutson's Fourteenth Amendment claims, it appears to the court that these claims would be barred by the <u>Rooker-Feldman</u> doctrine. The <u>Rooker-Feldman</u> doctrine prohibits federal district courts from reviewing and rejecting state court judgments. <u>Exxon</u>, 544 U.S. at 284. Here, the Knutsons allege the denial of due process and equal protection arose directly out of the state court proceedings[1]. These federal claims could "only succeed if the Court concludes the state court wrongly decided the issue." <u>Timley</u>, 448 F.3d at 628. If the Knutsons believed the North Dakota Supreme Court's decision violated the United States Constitution when the Court, singly or in concert with the City, denied the Knutsons due process of law or equal protection, the proper forum for such allegations was the United States Supreme Court. <u>Rooker-Feldman</u> prohibits review here.

<u>Fifth Amendment Takings Claim</u>

The Knutsons contend their property was taken without just compensation in violation of the Fifth and Fourteenth Amendments. The Fifth Amendment states, "Nor shall private property be

---

[1] The Knutsons argue, "At the time [they] initiated their former state action, they could not reasonably anticipate that the North Dakota courts would acquiesce in the City of Fargo's adopted policies and actions that deliberately shift the risk and cost of government to the Knutsons." (Doc. #7, p. 16). Douglas Knutson states, "Certain elements of this federal civil rights action, based upon Fourteenth Amendment violations, stem from the Supreme Court of North Dakota's decision in <u>Knutson v. City of Fargo</u> . . ." and "[O]ur civil rights action did not accrue until after the Supreme Court of North Dakota acquiesced in the deprivation of our Fourteenth Amendment rights as evidenced by its decision." (Doc. #9, ¶¶ 23 and 27).

7

taken for public use, without just compensation."

The analysis here is different from the previous claims.  Unlike claims under the Fourth and Fourteenth Amendments alleging unreasonable interference, deprivation of due process, and denial of equal protection, Fifth Amendment takings claims have an "exhaustion" component that is a prerequisite to bringing them to federal court.  The United States Supreme Court held in <u>Williamson County Regional Planning Com'n v. Hamilton Bank of Johnson</u>, that a taking claim is not ripe until a party seeks compensation through the state.  473 U.S. 172, 194 (1985).  The Court stated, "The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation."  <u>Id.</u>  Until state court proceedings result in the denial of payment, then, there has been no taking without just compensation.

Recognizing that prior state proceedings are necessary to a federal takings claim, one could naturally conclude that this claim is ripe and should proceed.  However, such a superficial reading of considering <u>Williamson County</u> quickly leads to a procedural quagmire of preclusion doctrines. *I.e.*, the only way this Court could conclude a "taking" occurred is to find that the state improperly denied just compensation, attacking and nullifying the state court judgment – the very result <u>Rooker-Feldman</u> and the preclusion doctrines seek to prevent.

This predicament was entertained by the Eighth Circuit Court of Appeals in <u>Kottschade v. City of Rochester</u>, 319 F.3d 1038 (8th Cir. 2003).  In <u>Kottschade</u>, the plaintiff pursued a takings claim in federal court without first pursuing relief in a state court inverse condemnation action.  <u>Id.</u> at 1039. The District Court held that, under <u>Williamson County</u>, exhaustion of state court remedies was required before the claim could be heard in federal court.  <u>Id.</u> at 1040.  The Eighth Circuit affirmed, but observed:

8

> The plaintiff points out, and justly so, that if he is required to seek a postdeprivation remedy in a state-court inverse-condemnation action, he may end up being altogether denied a federal forum for what is undoubtedly a federal right. . . . If [the state courts] hold against him, for example, on the ground that no taking has occurred, doctrines of former adjudication may be a bar to a new action under § 1983 in a federal trial court.

Id. at 1041.  As a solution, the Court hypothesized that a plaintiff may be able to reserve his federal claims.  Id. at 1042.  This has been the solution proposed by other circuits.  E.g. Santini v. Connecticut Hazardous Waste Management Service, 342 F.3d 118, 121 (2d Cir. 2003) (Holding that "litigants who pursue inverse condemnation actions in state court in order to comply with Williamson County may reserve their federal takings claims for later resolution in federal court."); DLX, Inc. v. Kentucky, 381 F.3d 511, 523 (6th Cir. 2004) (Holding that a plaintiff's "reservation of federal takings claims in a state takings action will suffice to defeat claim preclusion in a subsequent federal action.").

The concern that Williamson County could act to prevent almost all litigation involving state takings from being brought in state court is not shared by the United States Supreme Court.  The Supreme Court recently held that, despite the preclusive effect of Williamson County, federal takings claims are not exempt from the Full Faith and Credit statute.  San Remo Hotel v. City and County of San Franscisco, California, 545 U.S. 323, 343-46 (2005).  In San Remo Hotel, the Court overruled Santini and its proposal of reserving federal takings claims, holding that "issues actually decided in valid state-court judgments may well deprive plaintiffs of the 'right' to have their federal claims relitigated in federal court."  Id. at 342.  This deprivation can occur even where the plaintiff clearly preferred not to litigate in state court, but was required to do so by statute or prudential rules.  Id.  The Supreme Court noted that the fact that an inverse condemnation claim is a prerequisite to a Fifth Amendment taking claim does not prevent a party from bringing a Fifth Amendment claim

9

at the outset:

> The requirement that aggrieved property owners must seek compensation through the procedures the State has provided for doing so does not preclude state courts from hearing simultaneously a plaintiff's request for compensation under state law and the claim that, in the alternative, the denial of compensation would violate the Fifth Amendment of the Federal Constitution.

Id. at 346 (internal citations and quotations omitted).

In San Remo Hotel, the Supreme Court soundly rejected the notion that a plaintiff could somehow reserve his claims or that preclusion doctrines do not apply in takings proceedings, leaving the Knutsons with no claim that may be heard in federal court. Any of the preclusion doctrines could function to bar the Fifth Amendment takings claim. The doctrine of claim preclusion applies here because the Fifth Amendment claims could have been brought in state court. San Remo Hotel, 345 U.S. at 346. Rooker-Feldman prohibits this Court from hearing the Fifth Amendment claim because finding that the state courts were wrong to deny just compensation is a prerequisite to a plaintiff's "win" in federal court. Issue preclusion prohibits this Court from hearing the issues of fact related to the takings claim because the North Dakota and federal takings provisions are virtually identical,[2] and the state court's findings regarding governmental "action"[3] and discretionary immunity[4] are identical to, or even based on, federal law, issue preclusion appears to bar the takings

---

[2] The federal Constitution states "Nor shall private property be taken for public use, without just compensation," and the North Dakota Constitution states, "Private property shall not be taken or damaged for public use without just compensation."

[3] A federal "taking" may occur through the inevitably recurring invasion of water "due to authorized government action." Barnes v. United States, 538 F.2d 865, 871 (Ct. Cl. 1976). See also Accardi v. United States, 599 F.2d 423, 429 (Ct. Cl. 1979); Pinkham v. Lewiston Orchards Irrigation District, 862 F.2d 184, 189 (9th Cir. 1988).

[4] The North Dakota Supreme Court expressly adopted the discretionary immunity test applied by the United States Supreme Court in Berkovitz v. United States, 486 U.S. 531 (1988). Knutson, 714 N.W.2d at 50.

claims as well.

## CONCLUSION

Whether reserved or not, the Knutsons have no right to review of the same issues litigated before the state court. San Remo Hotel, 545 U.S. at 346. Every issue and claim raised in this federal action either was brought or could have been brought before the state courts. This Court is unable to hear this case without running afoul of the various preclusion doctrines. Therefore, the Court is without subject matter jurisdiction. The matter is hereby **DISMISSED** without prejudice**.** Because the Court lacks subject matter jurisdiction, the Motion for judgment on the pleadings cannot be heard on the merits and is found to be **MOOT.**

Let judgment be entered accordingly.

**IT IS SO ORDERED.**

Dated this 28th day of March, 2008.

       */s/     Ralph R. Erickson*
Ralph R. Erickson, District Judge
United States District Court